BENTON, J.,
concurring in part and dissenting in part.
I join the majority opinion insofar as it treats the standing question, and the judgment of the court to that extent, but I respectfully dissent from the judgment of the court insofar as it reverses the trial court’s ruling that the development order is inconsistent with the comprehensive plan. I believe the trial court got it right, and would affirm the final order in its entirety.
The trial court ruled, not that Crane Island could not be developed, but that the density approved by the challenged development order would have allowed more than four times as many units as what the comprehensive plan set as a maximum. As the majority opinion concedes, conservation was the land use designation for the whole of Crane Island when the Department of Community Affairs originally approved a comprehensive plan for Nassau County, with a permitted density for Crane Island of one unit per five acres.[4] Crane Island’s conservation land use designation has never changed.
This was not for want of trying. As the trial court found, and as the majority opinion notes, with commendable candor: “In 1994, 1997, 2003, and 2005, various amendments to the Comprehensive Plan were proposed to reclassify Crane Island as non-conservation land in order to increase the density, but those amendments were withdrawn after the Department expressed opposition.” Ante, p. 273 This string of unsuccessfully proposed amendments [5] leaves no doubt that Nassau County is well aware that the conservation land use designation remains applicable to Crane Island and has proceeded from that premise all along.[6]
*283 The majority opinion represents a gross misapplication of a technical provision in the comprehensive plan, Policy 1.09.03, which permits refining the boundaries between wetlands and uplands based on surveys performed by the St. Johns River Water Management District, when the precise location of a boundary between uplands and jurisdictional wetlands depicted on the future land use map is in doubt. When such a boundary separates a wetland tract on which development is not allowed from an upland tract on which development is permissible, Policy 1.09.03 provides that land areas “that are determined not to be jurisdictional wetlands will be allowed to be developed at the least intense adjacent land use densities and intensities.” The least intense adjacent land use in this case is conservation,[7] which permits a density of no more than one unit per five acres, as the trial court found.[8]
The majority opinion conflates the conservation land use designation with the mapping of jurisdictional wetlands. “Wetland” is not a designated land use category. See Nassau County Comprehensive Plan, Policy 1.02.05. Neither is “jurisdictional wetland,” which simply denotes a wetland over which the St. Johns River Water Management District has permitting and enforcement jurisdiction. The Conservation Element of the Comprehensive Plan, Goal 6.0, provides for conserving and protecting the “natural resources of the area, including air, water, wetland, wa-terwells, estuaries, water bodies, soils, minerals, vegetative communities, wildlife, wildlife habitat, and other natural and environmental resources,” not just jurisdictional wetlands.
The future land use map incorporated into the comprehensive plan as an integral part[9] places all of Crane Island within the *284 same land use category and depicts no boundary between uplands and wetlands. Elsewhere, the comprehensive plan provides that jurisdictional wetlands may be developed only “with all permitted development clustered on the upland portion of the site or on that portion of the site which will be least environmentally impacted.” Nassau County Comprehensive Plan, Policy 1.02.051. The effect of a survey delineating the boundary between jurisdictional wetlands and uplands on the parcel at issue here — all of which is designated conservation — is to locate the portion of the parcel on which development is to be “clustered,” not to quadruple the absolute number of units. Policy 1.09.03[10] does not affect the conservation land use designation, or alter density for the parcel as a whole.
Because the trial court — having correctly reached the question — correctly determined that the density approved by the development order far exceeds the maximum allowable density established by the comprehensive plan, I would affirm the order on appeal.

. The Department determined this land use designation was appropriate not only because wetlands are present, but also because maritime forests are on the island. See Nassau County Comprehensive Plan, Objective 1.04A.02 ("The County shall restrict development in conservation areas to the maximum extent possible short of a 'taking'. Development in conservation (Limited Development) will be permitted at a density no greater than 1 unit per 5 acres with permitted density clustered on the upland portion of the parcel... .").

. In order for a local government to amend its comprehensive plan, it must follow the procedure set out in section 163.3184(2), Florida Statutes. Florida Administrative Code Rule 9J-5.003(6) makes clear that "amendment” includes "any action of a local government which has the effect of amending, adding to, deleting from or changing an adopted comprehensive plan element or map or map series.” As part of the 1993 settlement between Nassau County and the Department of Community Affairs in which the comprehensive plan was originally approved, Crane Island was designated conservation for land use purposes on the future land use map. The County did not propose any "wetlands” land use category (although the word wetlands appears on the future land use map legend) in 1993 or thereafter, and the future land use map depicting Crane Island has not been amended since 1993.

.The Department’s Objections, Recommendations and Comments in response to these proposed amendments reflected the Department's wide-ranging concerns which were not solely or even predominantly based on the extent of wetlands on Crane Island. The Department of Community Affairs was concerned, for example, that the proposed amendments would increase permitted density and the intensity of uses in a designated coastal high hazard area, that there were insufficient data and analysis to demonstrate that the proposed land uses would protect identified natural resources on and off-site, and that the data were insufficient to demon *283 strate that the proposed amendment would be compatible with surrounding land uses, especially with adjacent conservation uses.

. The privately-owned portion of Crane Island that is the subject of the development order under challenge is a 207-acre parcel. The St. Johns River Water Management District determined that 71.58 acres of this privately-owned 207-acre parcel are uplands over which it has no jurisdiction. But this determination had no legal effect on the conservation land use designation of any part of the island. All of Crane Island in private ownership, as well as the northern end of Crane Island, which is owned by the Florida Inland Navigation District, is designated conservation.

. By limiting density to one unit per five acres, the comprehensive plan limits residential development on the 207-acre parcel to 41 units.

. Local governments are required to adopt comprehensive plans that conform to the requirements of Chapter 163. § 163.3167(2), Fla. Stat. (2009). A required element of a comprehensive plan is a "future land use plan element designating proposed future general distribution, location, and extent of the uses of land for residential uses, commercial uses, industry, agriculture, recreation, conservation, education, public buildings and grounds, other public facilities, and other categories of the public and private uses of land.... Each future land use category must be defined in terms of uses included, and must include standards to be followed in the control and distribution of population densities and building and structure intensities. The proposed distribution, location, and extent of the various categories of land use shall be shown on a land use map or map series which shall be supplemented by goals, policies, and measurable objectives.” § 163.3177(6)(a), Fla. Stat. (2009).
The comprehensive plan must also include "[a] conservation element for the conservation, use, and protection of natural resources in the area, including air, water, water recharge areas, wetlands, waterwells, estuarine marshes, soils, beaches, shores, flood plains, rivers, bays, lakes, harbors, forests, fisheries and wildlife, marine habitat, minerals, and other natural and environmental resources *284 ....”§ 163.3177(6)(d), Fla. Stat. (2009). Additionally, "[t]he land use map or map series contained in the future land use element shall generally identify and depict the following: 1. Existing and planned waterwells and cones of influence where applicable. 2. Beaches and shores, including estuarine systems. 3. Rivers, bays, lakes, flood plains, and harbors. 4. Wetlands. 5. Minerals and soils. 6. Energy conservation. The land uses identified on such maps shall be consistent with applicable state law and rules.” Id.

. Set out under Objective 1.09, Policy 1.09.03 reads in its entirety: Areas identified on the FLUM as wetlands are generally defined. A landowner may provide more detailed data to the County to clarify [the precise location of] jurisdictional wetland areas. Those land areas determined by the Board of County Commissioners with the advice of the St. Johns River Water Management District that are determined not to be jurisdictional wetlands will be allowed to be developed at the least intense adjacent land use densities and intensities. Where the adjacent land use remains wetlands the county will allow the use to be the least intense use bordering on the surrounding wetland.